IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY
and SIERRA CLUB,

    Plaintiffs,

v.                             CIVIL ACTION NO 3:20-cv-00470

AUSTIN CAPERTON, Secretary,
West Virginia Department of
Environmental Protection,

    Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is a citizen's suit for declaratory and injunctive relief against Austin Caperton, in his official capacity as the Secretary of the West Virginia Department of Environmental Protection ("WVDEP"), for violation of the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201 et seq.

2.    As described below, Plaintiffs allege that Defendant has violated non-discretionary duties under SMCRA requiring him to "promptly notify the Director, in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program. At a minimum, notification shall be required for— . . . (6) Significant changes in funding or budgeting relative to the approved program." 30 C.F.R. § 732.17(b).

3.    Plaintiffs seek a declaration that Defendants has violated his non-discretionary duty, an injunction requiring him to conform his future conduct to the federal law, and costs and expenses, including attorneys' and expert witness fees.

## JURISDITION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 30 U.S.C. § 1270(a)(1) and (2) and 28 U.S.C. § 1331.

5. On May 8, 2020, Plaintiffs gave notice of the violations and their intent to file suit to the Secretary of the West Virginia Department of Environmental Protection ("WVDEP"), the Acting Director of the Office of Surface Mining Reclamation and Enforcement ("OSM"), the Secretary of the Department of the Interior, and the Regional Director for the OSM's Appalachian Region.

6. More than 60 days have passed since the notice letters were sent. Neither OSM nor WVDEP have commenced or diligently prosecuted a civil action in a court of the United States or a state to address the violations alleged in Plaintiffs' notice letter.

7. Venue is appropriate pursuant to 30 U.S.C. 1270(c) because the surface coal mining operations complained of are in this judicial district.

## PARTIES

8. Defendant Austin Caperton is the Secretary of the WVDEP. He is responsible for ensuring that the WVDEP meets West Virginia's obligations as the "State regulatory authority" under SMCRA. He administers and enforces the provisions of the West Virginia Surface Coal Mining Reclamation Act ("WVSCMRA") to accomplish the requirements of West Virginia's approved State program under SMCRA. W.Va. Code § 22-3-2(c).

9. Plaintiff West Virginia Highlands Conservancy, Inc. ("WVHC") is a nonprofit organization incorporated in West Virginia. It has approximately 1,500 members. It works for the conservation and wise management of West Virginia's natural resources and is one of West Virginia's oldest environmental activist organizations. The West Virginia Highlands Conservancy

is dedicated to protecting West Virginia's clean air, clean water, forests, streams, mountains, and the health and welfare of the people who live there and for those who visit to recreate.

10. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 400 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

11. Plaintiffs' members, including Vivian Stockman, Cindy Rank, and Ronda Harper use and enjoy the areas affected by WVDEP's failure to fully reclaim all underground and surface mine sites in West Virginia that have been abandoned since the enactment of SMCRA on August 3, 1977, and since OSM's initial conditional approval of the West Virginia state program in 1981. Specifically, Plaintiffs' members visit, live near, drive by and/or fly over areas of the State and observe the adverse impacts which have resulted from the failure of WVDEP to fully reclaim all mine sites which SMCRA permittees have abandoned before completion of reclamation. The observable adverse impacts of the failure to properly reclaim these surface mines and the pollution of streams resulting from inadequate bonding adversely affect these members' property, recreational, aesthetic and environmental interests. For example, unreclaimed mines owned by ERP Environmental Fund discharge excessive amounts of selenium and other pollutant discharges that degrade water quality and harm aquatic life in downstream waters, including Rum Creek the Mud River and its tributaries. Because of this pollution, Plaintiffs' members refrain from using or restrict their usage of waters receiving these discharges.

12. At all relevant times, Plaintiffs were and are "persons" as that term is defined by SMCRA.  30 U.S.C. § 1291(19).

## STATUTORY FRAMEWORK

13. Each state with a federally approved state program under SMCRA, including West Virginia, has a nondiscretionary duty to "implement, administer, enforce and maintain it in accordance with the Act, this chapter and the provisions of the approved State program." 30 C.F.R. § 733.11.

14. Before a mining operation may commence, SMCRA requires that the permittee post a bond to cover the cost of reclamation in the event that the operator is unable or unwilling to compete its reclamation plan.  30 C.F.R. § 800.14.  This may be achieved through either a full-cost bond, which is a permit specific bond intended to cover the total costs of reclamation, or through an "Alternative Bonding System," ("ABS") which allows the permittee to begin mining without securing a bond for total reclamation costs at the outset.   30 C.F.R. § 800.11.

15. An ABS is only allowed so long as it ensures both that 1) there is an economic incentive for the permittee to complete reclamation; and, 2) "the regulatory authority will have available sufficient money to complete the reclamation plan for any areas which may be in default at any time."  *Id.* 800.11(e).

16. SMCRA provides that the "amount of bond shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority . . . ." 30 U.S.C. § 1259(a).

17. A State regulatory authority "shall promptly notify the Director [of OSM], in writing of any significant events or proposed changes which affect the implementation, administration, or enforcement of the approved state program."  30 C.F.R. § 732.17(b).

18. Notification pursuant to 30 C.F.R. § 732.17(b) is specifically required when there are "[s]ignificant changes in funding or budgeting relative to the approved program." 30 C.F.R. § 732.17(b)(6).

19. OSM has clarified that "the failure of a large mining company could be a very significant event." 67 Fed. Reg. 37610, 37623 (May 29, 2002).

20. SMCRA's citizen suit provision states that "any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter—. . . against the Secretary or the appropriate State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary or the appropriate State regulatory authority to perform any act or duty under this chapter which is not discretionary with the Secretary or appropriate State regulatory authority. 30 U.S.C. § 1270(a).

21. Pursuant to 30 U.S.C. § 1270(d) the court may award the costs of litigation, including attorneys' fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

**FACTS**

22. On January 21, 1981, OSM conditionally approved West Virginia's State program pursuant to 30 U.S.C. § 1253. WVDEP administers the State program under SMCRA. 30 C.F.R. § 948.10. West Virginia's state program is contained in WVSCMRA, W. Va. Code § 22-3-1, et seq., and in state regulations implementing that state law, 38 C.S.R. § 2-1, et seq.

23. On March 1, 1983, OSM approved, as part of West Virginia's State program, an ABS which consists of a Special Reclamation Fund and per acre site-specific bonding. 60 Fed. Reg. 51,900 (1995).

24. Pursuant to this system, an operator posts a site specific penal bond, not to exceed $5,000 per acre. W.Va. Code § 22-3-11. Should the permittee fail to complete reclamation, and should the reclamation costs at the mine exceed the penal bond amount, the WVDEP draws money from the Special Reclamation Fund to complete the reclamation plan. *Id*. at § 22-3-11(g). In this way, the site-specific bond and Special Reclamation Fund are meant to operate together to ensure the WVDEP will have sufficient money to "complete the reclamation plan for any areas which may be in default at any time" as required by 30 C.F.R. § 800.11(e).

25. The words "at any time" include both present and potential future insolvencies. OSM stated in 2002 that this regulation "requires that West Virginia modify its ABS to (A) eliminate the deficit and (B) ensure that sufficient money will be available to complete land and water reclamation on all existing *and future* bond forfeiture sites." 67 Fed. Reg. at 37613 (emphasis added).

26. Any reclamation plan necessarily includes provisions requiring compliance with all water quality laws. W.Va. Code § 22-3-10(a)(8).

27. The Special Reclamation Fund is currently funded by a tax of 27.9 cents per ton of clean coal mined in West Virginia. From this revenue, funds based on a tax rate of 15 cents per ton are being paid into the Special Reclamation Water Trust Fund (SRWTF), while coal tax revenues based on 12.9 cents per ton are being paid into the general Special Reclamation Fund.

28. According to the February 2020 annual report of the Special Reclamation Fund Advisory Council, as of December 31, 2019, the Special Reclamation Fund has accumulated assets of $61.6 million while the SRWTF has accumulated assets of $112.4 million.

29. On March 26, 2020, the WVDEP filed an Emergency Motion in the Circuit Court for Kanawha County, West Virginia, requesting that ERP Environmental Fund ("ERP") be placed

in a receivership and that a special receiver be appointed to take immediate control of ERP's assets and operations.

30. WVDEP's motion and supporting affidavit, and subsequent filings, show that ERP is insolvent. ERP has laid off all of its employees, has ceased operations, and has no source of cash or other assets available for reclamation and water treatment at its mines.

31. WVDEP's motion and supporting affidavit show that ERP's insolvency and cessation of operations have significantly affected the implementation and administration of the WVDEP's SMCRA bonding program because:

    a. ERP holds over 100 permits for coal mines in the Southern District of West Virginia such as the Hobet mining complex, Kayford mines, Rum Creek mines, and Samples mines, among others.

    b. ERP has accrued "hundreds of violations of the surface mining and water pollution laws." ERP continues to accrue violations of its permits, surface mining laws, and water pollution control laws.

    c. Since 2015, WVDEP has issued 160 notices of violation against ERP, 118 failure to abate cessation orders, and 41 orders to show cause why relevant ERP permits should not be revoked;

    d. In the month prior to WVDEP's motion for a receivership, "[WVDEP] issued roughly forty orders to show cause relating to unabated cessation orders relating to dozens of outstanding and unabated violations [ERP's] permits and surface mining and water pollution control laws."

    e. ERPs' insolvency has left "many mining sites unmanned, unsecured, unmaintained, and in various stages of land and water disturbance and

incomplete reclamation."

f. ERP holds bonds totaling $115 million which WVDEP has refused to forfeit;

g. WVDEP is unsure that ERP's surety bond provider can pay out the full $115 million in bonds that should be available for reclaiming ERP's permits.

h. ERP's bonds are inadequate to pay for the estimated $230 million needed to reclaim the land and the additional hundreds of millions of dollars needed to treat the polluted water at ERP's mine sites;

i. WVDEP's funds in the ABS and SRWTF are only $174 million and would be completely depleted if they were used to cover the difference between ERP's available bonds and ERP's reclamation and water treatment costs.

j. WVDEP acknowledged in its supporting affidavit for its motion that using the SRF to reclaim ERP's mines "would overwhelm the fund both financially and administratively" and that, therefore, reclamation may not be completed as required by SMCRA.

32. On March 27, 2020 the Kanawha County Circuit Court issued an order temporarily appointing a Special Receiver over ERP's operations and permits. Doss Special Receiver, LLC was named as the Special Receiver.

33. In its filings to this Court in a related proceeding, the Special Receiver has stated that the operation of the Special Receivership is inadequate to meet SMCRA and water pollution control requirements at ERP's mine sites.

34. Through its counsel, the Special Receiver has stated that developing compliance plans to meet permit limits for selenium at ERP's mines that are currently subject to a Consent Decree would "detract from other obligations that the Special Receiver has under the terms of the

Receivership Order."

35. The Special Receiver stated in a declaration that "[the cash currently available to the Receivership is insufficient to resume the earth-work component (grading, seeding, revegetating) of reclamation remaining to be completed at ERP's permits while also simultaneously bringing all NPDES permitted outlets into compliance with effluent limits."

36. Despite the estimated "hundreds of millions of dollars" in reclamation liabilities at ERP's mines, the Special Receivership is currently operating with a budget of approximately $1,000,000.

37. According to reports filed in this Court by the Special Receiver, none of the selenium treatment systems previously installed at the ERP mine sites covered by this Court's prior Consent Decrees are functioning.

38. Discharge Monitoring Reports filled by the Special Receiver show that selenium compliance problems at ERP's mines are still widespread.

39. Based upon the WVDEP's own statements by its counsel and by its Director of the Division of Mining Reclamation, neither the ABS nor the recently established Receivership are sufficient to satisfy the SMCRA reclamation obligations for ERP's mines, much less at "any areas which may be in default at any time."

40. ERP is not the only major mining company in West Virginia that is currently insolvent or that faces an imminent threat of insolvency.

41. Murray Energy and its subsidiaries, which operate more than 20 mines in West Virginia, are currently in bankruptcy.

42. Revelation Energy and affiliated companies, which have been repeatedly sued by the WVDEP for failure to comply with water treatment and reclamation obligations, are currently

in bankruptcy.

43. Southeastern Land LLC, is financially stressed and is currently subject to ongoing litigation by WVDEP for failing to meet water treatment obligations at approximately forty or more mines across West Virginia.

44. The insolvency or threatened insolvency of mining companies including, but not limited to, Murray Energy, Revelation Energy, and Southeastern Land, will further burden the Special Reclamation Fund and significantly affect the implementation and administration of WVDEP's SMCRA bonding program in West Virginia.

45. On July 8, 2020, WVDEP sent a letter to OSM in which it cited Plaintiffs' notice letter and denied that any significant events had occurred which affect the implementation, administration or enforcement of the approved State program. In addition, WVDEP did not notify OSM that it needed to make any changes in that program and instead claimed that its recent actions related to ERP's permits "have positively affected the State's program." It further failed to address the anticipated insolvencies referenced above.

## CLAIM FOR RELIEF

46. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 45 above.

47. Pursuant to federal SCMRA regulations, WVDEP is required to "promptly notify the Director, in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program." 30 C.F.R. § 732.17(b).

48. Specifically, notification is required for "significant changes in funding or budgeting relative to the approved program." *Id.,* § 732.17(b)(6).

49. The insolvency of ERP is a significant event under § 732.17(b) and has caused a significant change in funding or budgeting of WVDEP's bonding and reclamation program under § 732.17(b)(6).

50. Based on WVDEP's own statements through its counsel and its Director of the Division of Mining and Reclamation, the current ABS in West Virginia is insufficient to meet the reclamation obligations at mines of the insolvent ERP.

51. Based upon the statements of the Special Receiver appointed to oversee and operates ERP's mines, the Receivership recently established by the Circuit Court of Kanawha County, West Virginia, is inadequate to comply with reclamation obligations at ERP's mines.

52. The insolvencies of Murray Energy, Revelation Energy, and the threatened insolvency of Southeastern Land, LLC are also significant events under 30 C.F.R. § 732.17(b).

53. By failing to report the insolvencies or threatened insolvencies of ERP and other companies, WVDEP has failed to perform its non-discretionary duties under SMCRA.

54. By failing to report the insolvency of ERP and WVDEP's inability to comply with reclamation obligations at ERP's mines, WVDEP has violated rules promulgated under SMCRA.

55. By failing to report its inability to complete reclamation at ERPs' mines, WVDEP has violated its nondiscretionary duty and rules under SMCRA.

56. SMCRA authorizes citizens to sue a "governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution which is alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto." 30 U.S.C. § 1270(a)(1).

57. WVDEP is in violation of a rule and regulation issued pursuant to SMCRA, namely 30 C.F.R. § 732.17(b), because it has failed to notify OSM of significant events which

affect the implementation, administration or enforcement of West Virginia's approved State program under SMCRA.

58.   SMCRA authorizes citizens to sue a "State regulatory authority to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the . . . State regulatory authority to perform any act or duty under this chapter which is not discretionary with the . . . State regulatory authority." 30 U.S.C. § 1270(a)(2).

59.   WVDEP has failed to perform its nondiscretionary duty under 30 C.F.R. § 733.11 to implement, administer, enforce and maintain its State program in accordance with SMCRA and 30 C.F.R. § 732.17(b).

60.   WVDEP has failed to perform its nondiscretionary duty under 30 C.F.R. § 732.17(b) to notify OSM of significant events which affect the implementation, administration or enforcement of West Virginia's approved State program under SMCRA.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court,

A.   Declare that WVDEP has failed to perform its nondiscretionary duty under 30 C.F.R. § 733.11 to implement, administer, enforce and maintain its State program in accordance with SMCRA and 30 C.F.R. § 732.17(b).

B.   Declare that WVDEP has failed to perform its nondiscretionary duty under 30 C.F.R. § 732.17(b) to notify OSM of significant events which affect the implementation, administration or enforcement of West Virginia's approved State program under SMCRA.

C.   Order WVDEP to implement, administer, maintain and enforce, fully and without delay, every provision of SMCRA and the approved State program concerning bonding of coal mines.

D.     Award Plaintiffs their costs and expenses, including reasonable attorneys' and expert witness' fees, as authorized by Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), and 28 U.S.C. § 2412(d)(2)(A); and

E.     Grant Plaintiffs such other and further relief as this Court deems appropriate.

Respectfully submitted,
/s/ J. Michael Becher
J. Michael Becher (WV Bar No. 10588)
Derek Teaney (WV Bar No. 10223)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 382-4798
mbecher@appalmad.org
dteaney@appalmad.org

Counsel for Plaintiffs