**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **OHIO VALLEY ENVIRONMENTAL COALITION, WEST VIRGINIA HIGHLANDS CONSERVANCY, and SIERRA CLUB,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**AUSTIN CAPERTON, Secretary, West Virginia Department of Environmental Protection,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 3:20-cv-00470**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs' Complaint lodges a programmatic attack against the West Virginia Department of Environmental Protection's ("DEP") implementation, administration, and enforcement of West Virginia's federally-approved State surface mining program under the West Virginia Surface Coal Mining and Reclamation Act.  Specifically, Plaintiffs take direct aim at the adequacy of West Virginia's bonding program, asserting that "significant changes in funding and budgeting relative to [the State's] approved program" have occurred and seeking to compel DEP to send a notice to that effect to the federal Office of Surface Mining, Reclamation and Enforcement ("OSM") pursuant to 30 C.F.R. § 732.17(b).  Significantly, Plaintiffs acknowledge in their Complaint, as they must, that <u>DEP did, in fact, send a notice to OSM</u>; they simply take issue with DEP's assessment of the events they allege constitute significant changes, DEP's assessment of the impact thereof on the State's bonding program, and the content of DEP's

notice.[1]  Thus, their Complaint really challenges DEP's exercise of discretion in implementing, administering, and enforcing the State's program rather than its failure to comply with federal law.

This is not the first time DEP has squared off against the Plaintiffs on this same issue. Plaintiffs filed a nearly identical suit against DEP challenging the sufficiency of the State's bonding program roughly twenty years ago, which is why it is so remarkable that DEP finds itself again before the Court on a ginned up complaint against the State's bonding program under a different subsection of the very same federal statutory provision.[2]  Plaintiffs' Complaint this time around is notable for three reasons: it (1) ignores Fourth Circuit precedent they helped establish in the last round barring such claims from adjudication in a federal forum, (2) ignores the administrative forum for addressing their purported concerns, and (3) asks this Court to (a) supplant the judgment of West Virginia's state regulatory body, (b) determine for itself that "a significant change" in funding relative to the State's approved program has occurred, and (c) command DEP to give notice of their own alternative "significant change" to OSM.

DEP successfully defended substantively identical claims, raised by the same Plaintiffs (or their privities) in this case, in the Southern District of West Virginia case, *West Virginia Highlands Conservancy v. Norton*, 147 F.Supp.2d 474, 481 (2001), a decision rendered immediately on the heels of the seminal Fourth Circuit case involving the same parties in *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275 (4th Cir. 2001).  In both cases the courts dismissed DEP from citizens suits on sovereign immunity grounds.  Under *Bragg* and *Norton*, state

---

[1] *See* Compl. at ¶ 45.
[2] The Plaintiffs herein assert that DEP violated 30 C.F.R. § 732.17(b).  Among other claims, the Plaintiff in the *Norton* case cited below, alleged DEP had violated 30 C.F.R. § 732.17(f)(1) by failing to submit program amendments.  *See* Complaint, *West Virginia Highlands Conservancy v. Norton*, Case No. 2:00-cv-01062 (S.D. W. Va. Nov. 14, 2000) [ECF No. 1] at Counts 6 & 7.

sovereign immunity, guaranteed by the Constitution's Eleventh Amendment, bars citizen suits against DEP under the federal Surface Mine Control and Reclamation Act ("SMCRA") for alleged violations of an approved state surface mining program. Plaintiffs' shift from one subsection to another under the federal statute does not change the substance of this action.

In fact, given the identity in the underlying claims in this case and *Norton*, Plaintiffs' Complaint this time around is ripe for dismissal on the basis of *res judicata* and issue preclusion for attempting to relitigate the same claims, against the same party, previously adjudicated on the merits in *Norton*. Even setting aside claim and issue preclusion as a bar to this suit, *Bragg* and *Norton* compel dismissal of the Plaintiffs' Complaint herein on sovereign immunity grounds.

Beyond the jurisdictional bars to this action, the Plaintiffs' entire aim is to supplant DEP's discretionary decision-making authority with that of another, namely this Court's. In fact, Plaintiffs eschew the available federal administrative forum for addressing their alleged concerns with the State's program[3] and seek to supplant OSM's authority as well. In any event, to decide the question—was DEP required to go beyond its notice and notify OSM of a program change on the lines Plaintiffs suggest in their Complaint?—this Court must override DEP's express contrary determination (as noted in the Complaint) and determine, for itself and contrary to DEP's own exercise of discretion, that a "significant change in funding" relative to the State's bonding program has, in fact, occurred. Yet, DEP submits that no allegation contained in Plaintiffs' Complaint comes close to satisfying this prerequisite determination.

In fact, to grant Plaintiffs' requested relief, this Court must make a series of assumptions before ever reaching the ultimate question. First, the Court must assume, based upon nothing more than the mere pendency of one receivership, two Chapter 11 bankruptcy cases, and rumors

---

[3] 30 C.F.R. § 733.12(a)(2) authorizes any interested person to ask OSM to evaluate a State program.

of one other company under financial distress, that a significant change in funding relative to West Virginia's bonding program has occurred, despite the fact that over the past eight years almost the entire coal industry entered *and exited* from Chapter 11 as viable and ongoing entities with *no negative impact*, to date, on the State's bonding system.[4]  Second, the Court must assume that the mere pendency of one receivership, two Chapter 11 bankruptcy cases, and rumors of one other company under financial distress have had an adverse effect on the bonding program. Third, the Court must assume that the Plaintiffs were injured by said adverse effect on the bonding program.  The entire question as to whether DEP violated a non-discretionary duty by giving the notice it did is predicated upon an affirmative answer on each of these matters.  Yet, Plaintiffs fail to plead any facts that would support an affirmative answer to any of the foregoing.

Further, because the Complaint does not affirmatively resolve whether a significant event has, indeed, occurred, or ever will, Plaintiffs fail to establish that they have been injured in any respect.  Plaintiffs' alleged injury is, instead, tied to the occurrence of any number of hypothetical or conjectural events that have not and may never come to pass.  At present, Plaintiffs appear to have suffered no injury and it is unclear if they ever will.  Accordingly, Plaintiffs' Complaint fails for want or existence of a justiciable controversy.

What is plain from the face of their Complaint, and the fact they raise again the same unsubstantiated concern they have for nearly twenty years, is Plaintiffs' absolute certainty in their own righteousness.  That is the rub of the Plaintiffs' Complaint.  They wish to rewrite the notice DEP sent.  They seek to usurp DEP's discretionary authority with their own judgment and this Court's.  However, SMCRA empowers not the Plaintiffs or this Court, but DEP alone with

---

[4] Plaintiffs ignore, of course, that DEP secured the replacement of all its then remaining "self bonds," $244 million worth, with penal bonds in connection with Alpha Natural Resources's Chapter 11 reorganization case, thereby substantially reducing financial impact of any possible future failures involving its permits.

the regulatory responsibility and powers to oversee its bonding program.

Plaintiffs' Complaint fails at this pleading stage and must be dismissed.

## Factual and Procedural Background

On July 9, 2020, Plaintiffs filed this civil action under SMCRA's citizen suit provisions, 30 U.S.C. § 1270(a)(1)[5] and (2).  Compl. at ¶¶ 1, 4, 56–59.  Plaintiffs allege that DEP's Secretary, Austin Caperton, has "violated non-discretionary duties under SMCRA requiring him to 'promptly notify' [OSM], in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program," including "any significant changes in funding or budgeting relative to the approved program." Compl. at ¶ 2; see 30 C.F.R. § 732.17(b).  Plaintiffs allege that significant changes in funding relative to the State's coal mining bonding program and Special Reclamation Fund have occurred. Compl. at ¶ 44.[6]

Plaintiffs' allegations regarding the sufficiency (or alleged lack thereof) of the State's bonding program are seemingly tied to circumstances outside of DEP's regulatory powers, namely the current or future insolvency of four coal companies, namely ERP Environmental Fund ("ERP"), Murray Energy, Revelation Energy, and Southeastern Land.  Compl. at ¶¶ 29–45. Plaintiffs allege that the "insolvency or threatened insolvency of [these and unnamed other] mining companies . . . will further burden the Special Reclamation Fund and significantly affect the implementation and administration of WVDEP's SMCRA bonding program in West Virginia."  Compl. at ¶ 44.  Of course, it does not follow that an entity's insolvency necessarily

---

[5] See, infra, n. 9.
[6] DEP submits that no factual allegation supports Plaintiffs' allegation that "significant changes in funding" have actually occurred.  Indeed, the allegation could be fairly read only as a conclusory legal conclusion.  With respect to a motion to dismiss, a court is "not bound to accept as true a *legal conclusion* couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Iqbal v. Twombly*, 550 U.S. 544, 555 (2007)).

*will result* in the revocation, forfeiture, or the failure of the operator (or DEP) to carry out

reclamation or remediation obligations, and Plaintiffs do not plead any facts establishing that any

permit, related to any entity, including a dozen or more that have already been through

bankruptcy (some twice), has been turned over the Special Reclamation Fund or has otherwise

burdened the State bonding program.[7]  *See*, e.g., Compl.  However, these companies' alleged

insolvencies appear to be the sole basis for the Plaintiffs' assertion that "significant changes" in

funding have or will occur and render the Special Reclamation Fund inadequate to satisfy the

requirements of SMCRA.  *Id.*  On the foregoing basis, the Plaintiffs request, *inter alia*, that this

Court: (1) declare that DEP has failed to implement, administer, enforce and maintain its State

program, (2) declare that DEP has failed to notify OSM of significant events which affect the

implementation, administration, or enforcement of West Virginia's approved State program, and

(3) order DEP to implement, administer, maintain and enforce SMCRA and the approved state

program concerning bonding of coal mines.

    This present case parallels that of *West Virginia Highlands Conservancy v. Norton*, 147

F. Supp. 2d 474 (2001).  On November 14, 2000,[8] Plaintiff West Virginia Highlands

Conservancy filed a citizens suit under Section 1270(a)(2) of SMCRA.[9]  *Norton*, 147 F. Supp. 2d

---

[7] Since the commencement of ERP's receivership, DEP has revoked and forfeited the associated surety bonds related to four of ERP's 100-plus permits.

[8]  In support of this motion, DEP argues, *infra*, that principles of *res judicata* and collateral estoppel preclude the litigation of Plaintiffs' claims in this forum. Accordingly, DEP discusses Plaintiffs' prior lawsuit herein to establish the factual basis for their preclusion arguments. Indeed, "[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524, n. 1 (4th Cir. 2000) (internal citations omitted); *Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006).

[9] The Conservancy also charged DEP with violations of 30 U.S.C. § 1270(a)(1). However, the *Norton* Court dismissed those claims. 137 F.Supp.2d at 695. The Court concluded that Section 1270(a)(1) only allowed citizen suits against those in the capacity of an *operator* of a surface mine, but not in the capacity of a *regulator*.  *Id.* at 695 (citing *Okla.Wildlife Fed'n v. Hodel*, 642 F. Supp. 569 (N.D. Okla. 1986).  Because DEP was not alleged to have acted in the capacity of an "operator" of a coal mine, but as a "regulator," the *Norton* Court dismissed all claims against DEP pertaining to 1270(a)(1).  Interestingly, Plaintiffs have again charged DEP with violations of Section 1270(a)(1), although it makes no allegation that DEP was acting in the capacity as an operator of a surface mine.  Indeed, Plaintiffs' claims are singularly focused on DEP's actions as West Virginia's regulator under the State's

at 475. The Complaint alleged, *inter alia*, that the state alternative bonding program failed to meet SMCRA's minimum requirements and required program modifications in that regard, and that the State improperly approved mining permits based on its allegedly inadequate program. *Id.*

The Conservancy's main attack (both then and now) was DEP's alleged failure to properly implement, administer, and enforce West Virginia's bonding program. *Id.* There, like here, the Conservancy argued that the State's alleged failure violated various federal SMCRA laws and regulations. *Id.* After considering the then just-issued *Bragg* decision, this Court acknowledged that it was "forced to accept the conclusion that the West Virginia program is state law." *Id.* at 481. The *Norton* Court explained that "Congress directed that state alternative reclamation bonding systems must 'achieve the objectives and purpose of the bonding program pursuant to [30 U.S.C. §1259(c)].'" *Id.* Moreover, "Congress required 'the amount of such bonds shall be sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture.' 30 U.S.C. 1259(a)." *Id.* But, after noting its own dissatisfaction with DEP's bonding, the Court acknowledged that "federal law is subsumed in the approved program, even when inconsistent with federal law and disapproved by OSM" and "*must be enforced as state law, absent affirmative OSM action*." *Id.* (emphasis added). The Court then dismissed DEP for lack of jurisdiction over the Conservancy's claims against DEP on sovereign immunity grounds. *Id.*

<u>**Argument**</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a

---

SMCRA. Compl. at ¶¶ 4, 56–57. Accordingly, DEP requests that this Court dismiss all charges against DEP arising from Section 1270(a)(1) in-line with the *Norton* Court's earlier holding.

complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  "To survive a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks

more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'"  *Id.*

I.      **The doctrines of *res judicata* and collateral estoppel bar Plaintiffs' application for adjudication of their alleged claims in a federal forum**

Both the doctrines of claim preclusion (*res judicata*) and its "subset of the *res judicata*

genre," issue preclusion (collateral estoppel), bar Plaintiffs' claims.  *In re McNallen*, 62 F.3d

619, 624 (4th Cir. 1995).  Under the doctrine of *res judicata*, "a final judgment on the merits bars

further claims by parties or their privies based on the same cause of action."  *Montana v. United

States,* 440 U.S. 147, 153 (1979).  *Res judicata* "is not a technical rule but a rule of 'fundamental

and substantial justice,' 'of public policy and private peace,' which should be cordially regarded

and enforced by courts to the end that rights once established by the final judgment of a court of

competent jurisdiction shall be recognized by those who are bound by it in every way, wherever

the judgment is entitled to respect."  *Nash Cnty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 486

(4th Cir. 1981).  "To establish a res judicata defense, a party must establish (1) a final judgment

on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later

suit, and (3) an identity of parties or their privies in the two suits."  *Jones v. SEC,* 115 F.3d 1173,

1178 (4th Cir.1997) (internal quotation marks omitted), *cert. denied,* 523 U.S. 1072 (1998); *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

Each of these elements is present in the instant case, and the Complaint should be dismissed for want of jurisdiction pursuant to Rule 12(b)(1).[10]

### A. The *Norton* Court's holding that it lacked jurisdiction under the Eleventh Amendment constituted a final judgment on the merits in the prior suit.

The first element of *res judicata* is whether a final judgment on the merits was rendered in an earlier suit. "[A] jurisdictional dismissal is *res judicata* on the jurisdictional issue." *Okoro v. Bohman*, 164 F.3d 1059 (7th Cir. 1999); *Dockery v. Berryhill*, Case No. 3:18cv56 (HEH), 2019 WL 2480046, *4 (E.D. Va. 2019) (dismissal of Plaintiff's claims on sovereign immunity grounds served as a final judgment on the merits); *Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983) ("[A] judgment granting dismissal on the grounds of sovereign immunity is a final judgment on the merits, commanding *res judicata* effect.").

Plaintiffs again challenge the actions of a state officer's administration, implementation, and enforcement of West Virginia's approved State mining and bonding program. But the same jurisdictional deficiencies exist here as existed in *Norton*; a state officer's alleged violations of his discretionary duties under an approved State program are matters of State law. Plaintiffs

---

[10] DEP submits that Plaintiffs' Complaint could also be dismissed under the narrower doctrine of collateral estoppel. Applying collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (citing *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted)). To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *See id.; Polk v. Montgomery Cnty., Md.,* 782 F.2d 1196, 1201 (4th Cir.1986) (internal citations omitted). DEP submits these five factors are satisfied after applying its analysis regarding *res judicata* under Section I. Accordingly, DEP submits that Plaintiffs' Complaint is barred from relitigation under the doctrine of collateral estoppel.

could file this lawsuit five times, alleging new or different facts attacking the State's bonding

program or new or different SMCRA violations, but so long as Plaintiffs challenge the bonding

program's sufficiency, *Norton*'s holding that this court lacks jurisdiction to adjudicate the same

constituted a final determination on the underlying jurisdictional issue and acts as a jurisdictional

bar to any such case.

### B.   The cause of action in both the earlier and later suit are the same: Plaintiffs challenge the approved State surface mining bonding program's sufficiency.

The second requirement of *res judicata* is identity of causes of action.  *Nash Cnty. Bd. of

Ed.*, 640 F.2d at 487.  Under modern *res judicata* principles, "[a] 'much broader' definition of

'cause of action' . . . has developed" and "the term 'cause of action' is given varied application

depending on the facts in each case."  *Id.*  "[I]n some cases it depends on whether the facts in the

two cases are the same; in others, on whether the same primary right is asserted."  *Id.* at 487-88.

That the plaintiff bases the two suits on different statutes will not destroy the identity of two

actions, "nor will the rule be any different because a state statute is the authority for one action

and a federal statute for the other, when the two statutes afford the same right or interdict the

same wrong."  *Id.*  In considering the identity of the two lawsuits, it is the substance of the

actions that must be compared and not their form.  *Id.* (citing *Astron Indus. Assocs., Inc. v.

Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir. 1968)).

Substantively, this case and *Norton* present the same basic allegations and seek the same

basic relief.  Both Complaints allege that the State's bonding program is insufficient to permit

the State to comply with SMCRA.  Thus, while both cases nominally allege violations of

different provisions of federal law, both cases substantively attack the State officer's

implementation, administration, and enforcement of the State's bonding program under West

Virginia law.  Because the causes of action raised herein and in *Norton* are substantively the

same, Plaintiffs' Complaint should be given preclusive effect and dismissed as *res judicata*.

### C.  The parties are identical to those in the *Norton* case.

The final requirement for *res judicata* is the identity of the parties.  *Nash*, 640 F.2d at

493.  The Conservancy was the plaintiff and DEP the defendant in *Norton*.  These two parties

again appear in this case — the Conservancy, again aligned as a plaintiff, with DEP again

aligned as a Defendant — with the addition of Plaintiffs Ohio Valley Environmental Coalition

and the Sierra Club.  The addition of these two additional parties, however, does not defeat *res*

*judicata*.  Under commonly accepted principles, "privity" in the *res judicata* context may exist

"where a person is so identified in interest with a party to former litigation that he represents

precisely the same legal right in respect to the subject matter involved," or "one of the parties to

the suit is so closely aligned with his interests as to be his virtual representative."  *Nash*, 640

F.2d at 493–94 (citing *Jefferson Sch. of Soc. Sci. v. Subversive Act. Com. Bd.*, 331 F.2d 76, 83

(D.C. Cir.1963); *Aerojet Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975)).

Sierra Club and Ohio Valley Environmental Coalition align in interest completely with

the Conservancy.  First, the three groups have repeatedly acted in tandem in the past twenty

years in this[11] and other courts.[12]  Second, the three groups allege to represent members of their

organizations adversely affected by DEP's implementation, administration, and enforcement of

West Virginia's approved program.  Compl. ¶ 11.  Third, the three groups raise identical

allegations against DEP and seek the same relief.  *See*, e.g., Compl.  Fourth, the groups face the

same legal and jurisdictional infirmities herein, and as the Conservancy experienced in *Norton*.

Indeed, they are equally barred from pursuing their claims against DEP on sovereign immunity

---

[11] *See, e.g., Ohio Valley Environmental Coalition, Inc. v. ERP Environmental Fund, Inc.*, Civ. Act. Nos. 3:11-cv-00115 and 3:09-cv-01167.

[12] *See, e.g.,* Objection of Sierra Club et al. to Stipulation and Order Concerning Reclamation Bonding, *In re Alpha Natural Resources, Inc.*, Chapter 11 Case No. 15-33896 (Bankr. E.D. Va. Dec. 14, 2015) [ECF No.1082].

grounds.  Given that the environmental groups allege the same legal rights (or wrongs as the case may be) as the Conservancy in *Norton*, privity exists to establish that all parties are identical herein as to the *Norton* matter for *res judicata* purposes.

Inasmuch as DEP has established the existence of all the elements of *res judicata* (and collateral estoppel), Plaintiffs are precluded from being relitigated their claims in this forum and their Complaint should be dismissed under Rule 12(b)(1) (or Rule 12(b)(6)).[13]

## II.     The Eleventh Amendment bars Plaintiffs from seeking redress against DEP.

Even if the Court concludes that *res judicata* and collateral estoppel does not bar them, the Eleventh Amendment bars Plaintiffs' claims and this Court lacks jurisdiction to entertain Plaintiffs' Complaint.  The Eleventh Amendment guarantees state sovereign immunity: nonconsenting states may not be sued by private individuals in federal courts.  *Board of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (citations omitted).  Under the *Ex parte Young* exception to the sovereign immunity doctrine, federal courts may order prospective declaratory or injunctive relief from ongoing violations of federal law by state officers.  *Ex parte Young*, 209 U.S. 123 (1908).  However, in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), the Supreme Court held the Eleventh Amendment bars federal courts from enjoining state officers who violate *state* law.  And, in this case, SMCRA's citizen suit provision expressly limits citizen suits against a regulatory body to the extent that a case is *permitted by the eleventh amendment to the Constitution . . ..*"  30 U.S.C. § 1270(a)(1) (emphasis added).  The sovereign immunity question, then, is whether a state officer's alleged violation constitutes a violation of state or federal law.

---

[13] *See Fleming v. Virginia State University*, 2016 WL 927186, *1 n. 4 (N.D.W. Va. March 4, 2016) (noting that courts "have not been uniform as to whether a dismissal due to the Eleventh Amendment sovereign immunity should be examined through 12(b)(1) or Rule 12(b)(6)," while also noting that "[t]he distinction mak[es] no practical difference.").

This Circuit's precedent establishes that alleged violations of West Virginia's approved surface mining program constitute claims arising under state law. The Fourth Circuit in the seminal *Bragg* case held that state sovereign immunity barred the assertion of a SMCRA citizen suit against DEP for alleged violations of its approved mining program.[14] 248 F.3d at 288.

Here, in an apparent attempt to end-run *Bragg's* holding, as well as the later *Norton* case, Plaintiffs seem to attempt to plead around *Bragg* and characterize their claims as arising under federal —not state—law. However, no amount of artful pleading can conceal the Plaintiffs true claims. While Plaintiffs nominally allege violations of federal SMCRA regulations, the factual allegations, as well as the relief Plaintiffs' request in the Complaint, bely any assertion that their claims fall under federal law. Plaintiffs' challenge to the sufficiency of the State's bonding program and DEP's discretionary assessment thereof brings their claims squarely under State law

---

[14] In so holding, the Court focused on SMCRA's "cooperative federalism" framework, wherein the U.S. Secretary of the Interior and State regulatory authorities share surface mining regulatory power. *Id.* (citing H.R. Rep. No. 95–218, at 57 (1977), *reprinted in* 1977 U.S.C.C.A.N. 593, 595). "To implement this cooperative federalism, SMCRA directs the Secretary of the Interior to develop a "federal program" of regulation that embodies the minimum national standards and to consider for approval any "State programs" that are submitted to it for approval." *Id.* To obtain approval of its program, a State must pass a law that establishes the minimum national standards as "requirements" and demonstrate its ability to enforce its law. *Id.* (citing 30 U.S.C. § 1253(a)). Once the Secretary determines that a State program meets these requirements and approves it, the State's laws and implementing regulations govern surface mining in the State and State officials administer the program, *see id.* § 1252(e), giving the State "exclusive jurisdiction over the regulation of surface coal mining" within its borders, *id.* § 1253(a). *Id.* "Thus, SMCRA provides for *either* State regulation of surface coal mining within its borders *or* federal regulation, but not both." *Id.* at 289; *see* 30 U.S.C. §§ 1253(a), 1254(a).

   As part of this program, the West Virginia legislature enacted its own statute entitled the "Surface Coal Mining and Reclamation Act." *See* W. Va. Code § 22–3–1 *et seq.* As amended, the West Virginia Act vests the Director of the Division of Mining and Reclamation with the authority to administer the Act and otherwise to provide for the regulation of surface coal mining within the State. *See* W. Va. Code § 22–3–4. *Bragg*, 248 F.3d at 289. West Virginia's state program was conditionally approved on January 21, 1981 and the alternative bonding system was approved on March 1, 1983. Compl. at ¶¶ 22-23. Thus, West Virginia has "primacy" and its law exclusively regulates mining in the State. *See Bragg*, 248 F.3d at 289; 30 C.F.R. § 948.10 (noting the Secretary's approval of West Virginia's plan).

   Importantly, federal law and regulation become operative with respect to surface mining in West Virginia only upon the Secretary of the Interior's revocation of West Virginia's approved program under Section 1271. *See* 30 C.F.R. §§ 1254(a) & 1271; *Bragg*, 248 F.3d at 289 (finding that federal law and regulations "drop out" and reengage only following a Section 1271 enforcement proceeding by the Secretary of the Interior). To be clear, and Plaintiffs do not argue otherwise, West Virginia's primacy status has not been revoked and no program revocation proceedings have been initiated. *See*, e.g., Compl. Accordingly, West Virginia law exclusively regulates coal mining in this State and, thus, Plaintiffs' claims in this present case.

as this Court found in *Norton*.

In the same vein as *Norton*, Plaintiffs' allegation that DEP failed to notify OSM is predicated upon DEP's alleged failure to administer and enforce the State's bonding program under West Virginia Code §§ 22-3-11 and 12 and W. Va. Code. St. R. §§ 38-2-11 and 12. Plaintiff's acknowledge that DEP actually did send notice to OSM.[15]   As a result, they challenge DEP's discretionary decision in formulating the notice.   Thus, to even get to the question of whether notification was necessary (and that DEP allegedly violated a non-discretionary duty), this Court would need to override DEP's own determination and find contrary thereto that "significant changes in funding or budgeting relative to [West Virginia's] approved program" have occurred.   To do so would necessarily require this Court to supplant its discretion for that of DEP acting under state law.   This the Court may not do under *Bragg*.

For these reasons, the Court should apply *Bragg* and *Norton* and dismiss the Plaintiffs' Complaint under Rule 12(b)(1) or 12(b)(6) on sovereign immunity grounds.[16]

**III.      Plaintiffs fail to demonstrate that a justiciable case or controversy exists.**

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies."   U.S. Const. art. III, § 2; *see Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014).   Before exercising jurisdiction over a declaratory judgment action, the district court must first inquire whether there is an actual case or controversy "of sufficient immediacy and reality to warrant issuance of a declaratory judgment."   *Volvo Constr. Equip. North America, Inc. v. CLM Equipment Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (setting out two additional considerations of establishing an independent basis for jurisdiction and that the

---

[15] Plaintiffs' admission that DEP provided a notice to OSM, Compl. ¶ 45, undermines any allegation that DEP violated a non-discretionary duty.   This factual allegation alone supports dismissal on the merits under 12(b)(6).
[16] *See*, *supra*, n. 13.

exercise of the federal court's jurisdiction is not an abuse of discretion).  In the declaratory

judgment context, the inquiry "depends upon 'whether the facts alleged, under all the

circumstances, show that there is a substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

*Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941); *see also West v. Bank of*

*Commerce & Trusts*, 153 F.2d 566, 569 (4th Cir. 1946).

The Plaintiffs' allegations are insufficient to establish the existence of an actual case or

controversy under Article III.  Indeed, the Plaintiffs' factual allegations establish that their

alleged injuries (1) are wholly speculative, (2) are not "fairly traceable" to their alleged cause of

action, and (2) will not (and cannot) be redressed if the Court were to grant their requested relief.

### A.  Plaintiffs' speculative claims deprive them of standing.

Constitutional standing contains three elements.  First, the Plaintiff must allege that it has

suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)

(internal citations omitted); *Friends of Earth, Inc. v. Laidlaw Envtl. Srvs. (TOC), Inc.*, 538 U.S.

167, 180–81 (2000); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

Second, the injury must be fairly traceable to the challenged action of the defendant.  *Id.*  Third,

the injury must be "likely," as opposed to merely "speculative," that the injury will be redressed

by a favorable decision.  *Id.*  "The party invoking federal jurisdiction bears the burden of

establishing these elements."  *Lujan*, 504 U.S. at 561.  Here, Plaintiffs fail to satisfy their burden

and their Complaint must be dismissed under 12(b)(1) for lack of standing.

### 1.  Plaintiffs fail to allege an "actual" or imminent" injury-in-fact giving rise to a judiciable controversy.

It appears from the face of Plaintiffs' Complaint that their alleged injury stems from the

alleged inadequacy of the State's bonding program (and DEP's role in implementing, administering, and enforcing the approved State program).  Plaintiffs link the existence of certain existing or possible insolvency proceedings involving four identified mining companies to the alleged "significant changes in funding or budgeting" requiring a program amendment to the State's approved program.  Compl. at ¶¶ 43–45; *see also* Compl. at ¶¶ 28–42 (discussing DEP's enforcement actions relative to ERP's receivership proceedings in West Virginia State court).

The Plaintiffs essentially argue that, at some indeterminate time in the future, they *will be* harmed if the Special Reclamation Fund proves to be underfunded, because, they presume, indeterminate insolvency proceedings will result in indeterminate revocations and forfeitures and insufficient funding and such presumed insufficient funding will result in inadequate remediation or reclamation of environmental liabilities.  *Id.*  But, as is apparent from its recitation, the Plaintiffs' alleged harm cannot be fairly characterized as "actual," "concrete," or "particularized."  *Lujan,* 504 U.S. at 560.  Rather, the "harm" Plaintiffs complain of is hypothetical and conditioned upon the occurrence of a number of events that have yet to occur (and may never occur).  Indeed, in the paragraphs of the Plaintiffs' Complaint that perhaps most accurately describe their alleged "harm," ¶¶ 43–45, it is evident that Plaintiffs presume (despite more than eight years of experience to the contrary) that every insolvency or bankruptcy proceeding of a mining company will result in the revocation or forfeiture of every mining permit associated with those financially distressed companies.

In reality, Plaintiffs' Complaint contains no allegations demonstrating that *any* permits have been revoked or forfeited with respect to any of the named coal companies (ERP, Southeastern Land LLC, Murray Energy, and Revelation Energy)[17] or any other of the dozen or

---

[17] As noted, DEP has actually revoked and forfeited the associated bonds relating to four ERP permits.

more West Virginia coal companies that filed Chapter 11 bankruptcies just in the past eight years.  *See*, e.g., Compl.  Plaintiffs plead no facts demonstrating that any permits related to these (or other mining entities) are in imminent danger of being revoked or forfeited or that DEP has any plans to revoke or forfeit any permits associated with these companies.  *Id.*  And they certainly do not allege that *every* permit pertaining to these companies will be revoked or forfeited *en masse*.  *Id.*  In order to establish Plaintiffs' alleged harm, any number of presently unknown events would have to occur, and any number of unknown decisions made, before the Plaintiffs' envisioned harm would come to pass, if ever.

From a practical perspective, an entity's presence in bankruptcy proceedings (or any other insolvency proceeding) does not demand the conclusion that every permit belonging to that entity will be revoked and forfeited.  Mining companies are frequently reorganized in a Chapter 11 bankruptcy and continue to operate and perform their obligations under their mining permits.[18]  Murray Energy, cited by Plaintiffs, appears poised to do just that.[19]  Mining permits are frequently sold or otherwise transferred in the liquidation or reorganization of a debtor entity, with the purchasers or transferees assuming the debtor's reclamation and remediation obligations under the debtor's (former) permits.[20]  For example, Revelation Energy, cited by Plaintiffs, has thus far transferred four West Virginia permits to Contura Energy, filed a motion to transfer two more to Ramaco, and is in active and ongoing discussions to transfer its three other permits.[21]

---

[18] *See, e.g.,* Orders Confirming Chapter 11 Plans, *In re Blackhawk Mining LLC*, Chapter 11 Case No. 19-11595 (Bankr. D. Del. Aug. 29, 2019) [ECF No. 251]; *In re Arch Coal, Inc.*, Chapter 11 Case No. 16-40120 (Bankr. E.D. Mo. Sept 15, 2016) [ECF No. 1334]; *In re Alpha Natural Resources, Inc.*, Chapter 11 Case No. 15-33896 (Bankr. E.D. Va. July 12, 2016) [ECF No. 3038].
[19] *See, e.g.,* Order Approving Debtors Continued Solicitation of Amended Plan, *In re Murray Energy Holdings Co.*, Chapter 11 Case No. 19-56885 (Bankr. S.D. Ohio Aug. 7, 2020) [ECF No.1939].
[20] *See, e.g.,* Order Approving Sale of Maple Eagle Assets, *In re Murray Metallurgical Coal Holdings, LLC*, Chapter 11 Case No. 20-10390 (Bankr. S.D. Ohio Apr 1, 2020) [ECF No. 326].
[21] *See* Order Approving Sale of Pax Mine to Contura Energy, Inc., *In re Blackjewel LLC*, Chapter 11 Case No. 3:19-bk-30289 (Bankr. S.D. W. Va. Aug 29, 2019) [ECF No. 964], Motion to Approve Sale to Ramaco Resources Land

And, as noted, the Alpha bankruptcy case resulted in hundreds of millions of dollars of *additional* bonding to *bolster* the sufficiency of the program.

Thus, the conclusion that bankruptcy necessarily results in permit revocation and bond forfeiture is fatally flawed because it ignores reality. Indeed, more than eight years of insolvency proceedings across the entire coal mining industry have kept reclamation and remediation obligations unaltered or moving horizontally, operator to operator, as opposed to the hands of DEP and, therefore, have not affected the Special Reclamation Fund at all. Accordingly, Plaintiffs' alleged injuries cannot be characterized as "imminent" because the Plaintiffs' complained of "harm" is neither certainly impending," nor is there a "substantial risk that the harm will occur." *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1189; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).

### 2. Plaintiffs' injury is not traceable to DEP's alleged failure to notify OSM of an alleged significant change in the funding of the State's approved program.

The "fairly traceable" requirement ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct. *See Lujan,* 504 U.S. at 560. Because Plaintiffs have failed to state an actual or imminent injury, such injury is not "fairly traceable to the challenged action of the defendant," in this case, DEP's alleged failure to notify OSM of "significant changes in funding or budgeting relative to [West Virginia's] approved program." Compl. at ¶ 2 (citing 30 C.F.R. § 732.17(b)). Again, one would necessarily have to presume that "significant changes" to the State's bonding system have occurred, followed by the presumption that, as a result of the significant changes in the State bonding program, the Plaintiffs have suffered an injury, which would lead to the next presumption that the significant changes in

---

Holdings, LLC, *In re Blackjewel LLC*, Chapter 11 Case No. 3:19-bk-30289 (Bankr. S.D. W. Va. July 18, 2020) [ECF No. 2174].

funding had an adverse effect on the Plaintiffs, which was, somehow, traceable to DEP's alleged failure to notify OSM. That sequence makes no sense. DEP also notes that the Plaintiffs have a different vehicle for obtaining federal oversight of the State's bonding program under 30 C.F.R. § 733.12(a)(2).

### 3. A favorable decision against DEP will not redress Plaintiffs' alleged injuries.

Ultimately, DEP's recourse under the Plaintiffs' statute of choice, 30 C.F.R. § 732.17(b), is to notify OSM that a program change may be warranted.[22] Once DEP notifies OSM, OSM has discretion to make a determination as to whether a program amendment is warranted under the applicable facts and circumstances. Suffice it to say, this Court could order DEP to advise OSM of some new and different significant event, OSM could exercise its discretion and decline to act, and Plaintiffs would be in the same position and with the same grievances they have today, *i.e.*, that DEP is not adequately implementing, administering, or enforcing its bonding program or the Special Reclamation Fund. Indeed, it appears that Plaintiffs' grievances are really with OSM's failure to act upon DEP's notice to OSM. *See, supra*, n. 22. There exists no circumstance wherein a favorable decision against DEP in this case will redress Plaintiffs' alleged injuries and, therefore, Plaintiffs fail to meet their burden under the third, and final, standing prong.

Because Plaintiffs' have failed to establish a justiciable claim on the basis of standing, the Court should dismiss their Complaint under 12(b)(1).

---

[22] Importantly, DEP *did* contact OSM via written letter as required by 30 C.F.R. § 732.17. Compl. ¶ 45. DEP advised OSM, by letter dated July 8, 2020, that the Plaintiffs believed that significant changes in funding related to West Virginia's bonding program had occurred and, further, that the Plaintiffs had provided their 60 days' notice of their intent to sue DEP if OSM was not timely notified of these significant changes. *Id.* However, DEP advised OSM, as is its absolute discretion to do so, that no significant changes in funding or budgeting relative to the approved program had occurred under 30 C.F.R. § 732.17(b)(6). Despite being aware of Plaintiffs' charges that significant changes to the funding of the State's bonding program and Special Reclamation had occurred in its 60 days' notice letter to DEP, OSM declined, in its absolute discretion, to act.

**B.  Plaintiffs' claims are not ripe for judicial review.**

A dispute is ripe in the constitutional sense if it "present[s] concrete legal issues, presented in actual cases, not abstractions."  *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1188 (citing *Colwell v. HHS,* 558 F.3d 1112, 1123 (9th Cir.2009) (internal quotation marks omitted)).  The ripeness doctrine prevents judicial consideration of issues until a plaintiff alleges a controversy in "clean-cut and concrete form."  *Miller v. Brown*, 462 F.3d 312, 318–19 (4th Cir. 2006) (citing *Rescue Army v. Mun. Court of L.A.,* 331 U.S. 549, 584 (1947)).  To determine whether the case is ripe, we "balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'"  *Id.* at 319 (citing *Franks v. Ross,* 313 F.3d 184, 194 (4th Cir.2002) (quoting *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 733 (1998)).  "Ripeness and standing are closely related because they 'originate from the same Article III limitation'" and "'boil down to the same question.'" *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1188–89 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n. 5 (2014)).

As discussed, *supra* Section III.A.1., Plaintiffs' Complaint hardly presents a "clean-cut" controversy in "concrete form."  The very fact that Plaintiffs' alleged injuries are so abstract and so attenuated demonstrates that there exists no judicial controversy appropriate for adjudication at present.  *See Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir.1992) (noting that case is not fit for judicial decisions when the outcome is dependent on future uncertainties).  Plaintiffs' claims and alleged injuries are entirely premised on events that have not and may never occur.  Plaintiffs have failed to meet their burden at the pleading stage that their claims are ripe for adjudication and, therefore, the Court should dismiss their Complaint under 12(b)(1).

## <u>Conclusion</u>

DEP requests that this Court dismiss the Plaintiffs' Complaint.

Dated:  August 12, 2020

*/s/ Kevin W. Barrett*
Benjamin L. Bailey (WVSB #200)
Kevin W. Barrett (WVSB #13569)
Maggie B. Burrus (WVSB #12518)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bbailey@baileyglasser.com
kbarrett@baileyglasser.com
mburrus@baileyglasser.com

*Attorneys for the Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **OHIO VALLEY ENVIRONMENTAL** ) | |
| **COALITION, WEST VIRGINIA** ) | |
| **HIGHLANDS CONSERVANCY, and** ) | |
| **SIERRA CLUB,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 3:20-cv-00470** |
| ) | |
| **AUSTIN CAPERTON, Secretary,** ) | |
| **West Virginia Department of** ) | |
| **Environmental Protection,** ) | |
| ) | |
| **Defendant.** ) | |

## CERTIFICATE OF SERVICE

I, Kevin W. Barrett, do hereby certify that on August 12, 2020, I electronically filed the foregoing "**Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint**" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

> J. Michael Becher, Esquire
> Derek Teaney, Esquire
> Appalachian Mountain Advocates
> P. O. Box 507
> Lewisburg, WV  24901

> _/s/ Kevin W. Barrett_
> Kevin W. Barrett (WVSB #13569)