# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS, and
SEIRRA CLUB,

            Plaintiffs,

v.                                          CIVIL ACTION NO.   3:20-0470

AUSTIN CAPERTON, Secretary,
West Virginia Department of Environmental Protection,

            Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Austin Caperton's Motion to Dismiss (ECF No. 9).

Plaintiffs filed a response in opposition to the Motion (ECF No. 10), and Defendant replied (ECF

No. 11). The dispute is now ripe for review. For the following reasons, the Motion is **DENIED**.

## I. LEGAL BACKGROUND

This suit arises from the Surface Coal Mining Control and Reclamation Act, 30 U.S.C. §

1201 *et seq*. ("SMCRA"). Congress enacted the SMCRA in 1977 to "strike a balance between the

nation's interests in protecting the environment from the adverse effects of surface coal mining

and in assuring the coal supply essential to the nation's energy requirements." *Bragg v. W.

Virginia Coal Ass'n*, 248 F.3d 275, 288 (4th Cir. 2001) (citing 30 U.S.C. § 1202(a), (d), (f)). To

facilitate this balance, the Act established a permitting system that requires surface mining permit

holders to reduce their environmental impact by reclaiming the site after extraction. 30 U.S.C. §

1202.

The federal government administers the SMCRA unless a state enacts its own program. *Id*.

at § 1253. The Office of Surface Mining Reclamation and Enforcement ("OSM"), a branch of the Department of the Interior, is tasked with promulgating regulations, approving or disapproving state programs, overseeing state administration, and providing federal programs for states that do not take over administration. *See id*. at § 1211(c). Once OSM approves a state program, the state administers the SMCRA independently and maintains "exclusive jurisdiction" over the enforcement of the SMCRA minimum permitting standards. *Id*. at § 1253(a). Nevertheless, OSM retains some oversight authority to ensure that the state program complies with the SMCRA. *See id*. at §§ 1267, 1271; 30 C.F.R. § 732.17.

The federal government approved West Virginia's SMCRA program in 1981. 30 C.F.R. § 948.10. The West Virginia legislature enacted the "Surface Coal Mining and Reclamation Act" and vested the authority to administer the program with the Secretary of the West Virginia Department of Environmental Protection ("DEP"). W. Va. Code §§ 22-3-1 *et seq*.

The Complaint alleges that the Secretary of the DEP, Defendant Caperton, violated 30 C.F.R. § 732.17 ("Regulation 732.17"), which outlines procedures for OSM regulatory oversight. Under Regulation 732.17(b), the state "shall promptly notify [OSM], in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program." The Regulation further defines "significant events" as including "[s]ignificant changes in funding or budgeting relative to the approved program." 30 C.F.R. § 732.17(b)(6). Specifically, Plaintiffs allege that Defendant violated this duty when DEP refused to notify OSM that several of its permit holders have or will become insolvent. Compl. ¶ 49, ECF No. 1. Plaintiffs reason that these insolvencies are "significant changes" to DEP's funding because they will overwhelm DEP's bonding system. *Id*. at ¶ 31.

The SMCRA requires all state programs to administer a bonding system to disincentivize

permittees from abandoning mines before reclaiming the site. *See* 30 U.S.C. § 1259; 30 C.F.R. 800.11. A permit applicant must post a performance bond "sufficient to assure the completion of the reclamation plan if the work had to be performed by the regulatory authority in the event of forfeiture . . . ." 30 U.S.C. § 1259(a). Alternatively, a state may propose an alternative bonding system that "achieve[s] the objectives and purposes of the bonding program pursuant to this section." *Id*. at § 1259(c); 30 C.F.R. § 800.11(e). West Virginia administers an alternative bonding system that is two-tiered. First, permit applicants are required to post a site-specific bond not to exceed $5,000 per acre, even if the projected reclamation costs exceed this rate. *See* W.Va. Code § 22-3-11(a). Second, to subsidize the remaining reclamation costs, West Virginia established the Special Reclamation Fund and the Special Reclamation Water Trust Fund (collectively, "Special Reclamation Fund"), which are funded by a tax of 27.9 cents per ton of coal mined in the state. W.Va. Code § 22-3-11(g). Together, the site-specific bonds and Special Reclamation Fund are intended to ensure that DEP will have sufficient money to "complete the reclamation plan for any areas which may be in default at any time." *See* 30 C.F.R. § 800.11(e).

According to the Complaint, DEP has recognized in other court filings that one permittee's recent insolvency alone will overwhelm its alternative bonding system. In March 2020, DEP filed an emergency motion in Kanawha County Circuit Court to appoint a special receiver to assume ERP Environmental Fund Inc.'s ("ERP") responsibilities. Compl. ¶ 29; Aff. of Harold D. Ward, Ex. A to Def.'s Reply ¶ 3, ECF No. 11-1. In support of its motion, DEP submitted a memorandum and supporting affidavit [1] that detailed ERP's insolvency and noncompliance as follows:

---

[1] The Defendant submitted the affidavit to this Court as Exhibit A to the Reply (ECF No. 11-1). Defendant did not provide grounds on which the Court may consider this evidence in deciding this Motion to Dismiss. Nevertheless, the Court finds that the affidavit is incorporated into the Complaint by reference (*see* Compl. ¶¶ 30-31, 35), that it is integral to the Complaint, and that the Plaintiffs did not challenge its authenticity. *See Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and

- "[ERP] holds more than 100 DEP-issued permits" and "agreed that it is in material default of its obligations under its permits and its reclamation agreement with DEP and does not have any sources of cash or other assets available for the reclamation and water treatment required under its permits, the reclamation agreement, or applicable law." Ward Aff. ¶ 9

- "ERP has, as of March 19, laid off all of its employees and ceased operating all together." *Id*. at ¶ 10.

- DEP has issued 160 notices of violation against ERP, 118 failure to abate cessation orders, and 41 orders to show cause why relevant ERP permits should not be revoked since 2015. *Id*. at ¶¶ 5-7.

- "DEP estimated that the costs of reclaiming and remediating [ERP's sites are] in excess of $230 million." *Id*. at ¶¶ 22-25.

- Although ERP holds approximately $115 million in bonds, DEP expressed "concern[] that forfeiting [ERP's] $115 million in surety bonds at more or less the same time could be problematic." *Id*. at ¶¶ 61, 63.

- "If ERP remains in widespread default," the Special Reclamation Fund "would thereupon assume responsibility for reclaiming and remediating all of ERP's mining sites. . . ." *Id*. at ¶ 62.

- ERP's insolvency could "overwhelm the fund both financially and administratively, with the result that the actual reclamation and remediation of the ERP mining sites could be delayed." *Id*. at ¶ 64.

- "Without immediate and decisive action to resume even the most basic permit and

---

there was no authenticity challenge).

site maintenance, many of ERP's sites can be expected to begin to threaten imminent and identifiable harm to the environment and the public health and safety." *Id.* at ¶ 13.

The state court granted DEP's motion and appointed Doss Special Receiver, LLC. The Special Receiver is operating with "a budget of approximately $1,000,000." Compl. ¶ 36. Consequently, the deficit between reclamation costs and available funds is between $114 and $229 million, depending on DEP's ability to collect ERP's bonds. *Id.* at ¶¶ 32, 36. Plaintiffs allege that, as of December 31, 2019, the Special Reclamation Fund has accumulated $174 million, only ten percent of which DEP may spend in a year. *Id.* at ¶ *28*; W. Va. Code § 22-3-1.

Based on the law and facts above, Plaintiffs sent DEP and OSM a notice of intent to sue on May 8, 2020. *Id.* at ¶ 5. Neither DEP nor OSM initiated suit within 60 days. Compl. ¶ 6. However, on July 8, 2020, DEP sent a letter to OSM that "cited Plaintiffs' notice letter and denied that any significant events had occurred which affect the implementation, administration or enforcement of the approved State program." *Id.* at ¶ 45. Plaintiffs filed this suit the next day. *See id.*

## II. ANALYSIS

Defendant seeks to dismiss this suit on several grounds, including lack of standing and ripeness, failure to state a claim, res judicata, and Eleventh Amendment immunity. As explained below, the Court rejects these arguments and denies the Motion.

### A. Standing

Federal courts do not have jurisdiction over a suit unless the plaintiff can establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In general, standing requires three elements: (1) an injury in fact that is both concrete and actual or imminent; (2) a causal connection between the injury and the defendant's alleged wrongdoing; and (3) a substantial likelihood that a

favorable judgment will redress the injury. *Id*. Defendant argues that Plaintiffs' alleged injuries are not concrete or actual because the alternative bonding system has not yet been overburdened. Defendant also argues that a favorable judgment may not redress the alleged deficiencies in the alternative bonding system because even if the Court orders Defendant to issue notice, OSM may choose not to require a program amendment. Although these arguments may have merit under the traditional standing analysis, that analysis does not apply. Where, as here, the plaintiff alleges a procedural injury, a modified standard applies. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

In *Summers v. Earth Island Inst.*, the Supreme Court held that when a plaintiff asserts a procedural injury, that plaintiff does not need to meet the "normal standards for redressability and immediacy." *Id*. at 496. Rather, a plaintiff can enforce a procedural right "so long as the procedures in question are designed to protect some threatened concrete interest of the person's that is the ultimate basis of the person's standing." *Lujan*, 504 U.S. at n.8. The Court in *Lujan* noted that a plaintiff has a concrete interest if he or she lives "adjacent to the site for proposed construction of a federally licensed dam has standing to bring an action challenging the licensing agency's failure to prepare an environmental impact statement, even though such a person cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Id*. Applying this rule, the Fourth Circuit in *Pye v. United States*, held that the plaintiffs suffered a procedural injury where the United States Army Corps did not "take into account" the new construction's potential effect on historical sites before approving the project, despite being required to do so by the National Historic Preservation Act. 269 F.3d 459, 467 (4th Cir. 2001). The court held that this procedural injury was sufficiently connected to the plaintiffs' concrete aesthetic and proprietary interest in

their neighborhood and concluded that the plaintiffs had standing. *Id*.

Here, as in *Lujan* and *Pye*, the Plaintiffs have sufficiently alleged that DEP violated a procedural right that is designed to protect their interests. According to the Complaint, Defendant has refused to notify OSM of the financial failure of several large permittees and the impact that those failures have on the alternative bonding system. As part of the broader oversight procedure, the notification requirement was intended to ensure state compliance with the SMCRA standards, which in turn, serve to protect Plaintiffs' interest as environmental conservation organizations. *See* 30 C.F.R. § 732.17.

The Court also finds that there is a sufficient connection between this procedural injury and the Plaintiffs' concrete interests. Under Regulation 732.17's oversight procedures, a state is required to report significant events that impact the state's "implementation, administration or enforcement" of the state program. 30 C.F.R. § 732.17(b). Once a state reports a significant event, OSM must conduct a formal review, and may require the state to submit a proposed amendment that will bring its program into compliance with the SMCRA. *Id*. at § 732.17(c)-(e). Accepting the allegations in the Complaint as true, DEP's avoidance of the notification requirement has prevented OSM review and enabled West Virginia to continually underfund its Special Reclamation Fund. Given that DEP must fund mine reclamation using the Special Reclamation Fund when a permittee forfeits, its undercapitalization has resulted in excessive discharge of selenium and other pollutants from unreclaimed mines. *See* W. Va. Code Ann. § 22-3-11. In fact, DEP recognized in the special receivership action that "ERP's mine sites can be expected to begin to threaten imminent and identifiable harm to the environment and the public health and safety." Ward Aff. ¶ 13. Due to this pollution, Plaintiffs' members are deprived of the recreational use of West Virginian waterways, a recognized injury for standing purposes. *See Lujan*, 504 U.S. at n.2

-7-

(quoting *Sierra Club v. Morton*, 405 U.S. 727, 735). Thus, the Court concludes that the Plaintiffs have alleged sufficient facts to establish standing.

### B. Ripeness

Next, the Court turns to Defendant's argument that the present suit is not ripe for review. Ripeness, like standing, is a constitutional and prudential doctrine that limits federal courts' jurisdiction to the "cases" and "controversies" described in Article III, § 2 of the Constitution. The doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). In evaluating whether a dispute is ripe, courts must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006). The "hardship" consideration in a ripeness analysis is "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208-09 (4th Cir. 1992).

First, Plaintiffs raise a purely legal issue that is not dependent on future uncertainties: whether permit holders' insolvencies and bankruptcies were "significant events" such that the DEP Secretary was required to notify OSM but failed to do so. As alleged, DEP has already acknowledged that ERP is insolvent and unable to reclaim approximately 100 permitted sites. This inability has impacted both tiers of the alternative bonding system. First, it has led to numerous violations of ERP's permits and provides cause to forfeit ERP's bonds. Ward Aff. ¶¶ 5-7; *see* W. Va. Code Ann. § 22-3-17(b)("Upon the operator's failure to show cause why the permit should not

be suspended or revoked, the director shall immediately suspend or revoke the operator's permit. If the permit is revoked, the director shall initiate procedures in accordance with rules promulgated by the director to forfeit the entire amount of the operator's bond.") Second, it has increased the liabilities attributable to the Special Reclamation Fund. Although DEP has not yet revoked ERP's permits or withdrawn Special Reclamation Fund monies, these facts do not preclude a finding that a significant change has taken place. As the permitting agency, DEP is ultimately responsible for funding reclamation of abandoned mines. *See* W. Va. Code Ann. § 22-3-11. Therefore, ERP's insolvency has shifted the financial burden from ERP to DEP and gives rise to a claim that is not dependent on future uncertainties.

Second, the Court finds that Plaintiffs would face a hardship if judgment is withheld. If the Court withholds judgment, it will enable DEP to continue avoiding OSM oversight. As noted above, this avoidance is connected to a concrete injury, and for ripeness purposes, an ongoing hardship. Numerous untreated mines in the state are discharging excessive pollutants and are preventing Plaintiffs' members from using the polluted waterways. Accordingly, Plaintiffs have established a hardship and present a claim that is ripe for review.

### C.  Failure to State A Claim

Under Federal Rule of Civil Procedure 12(b)(6), a Court may dismiss a complaint if it fails to state a claim upon which relief can be granted. When ruling on a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive the motion, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court finds that the Complaint presents a plausible claim. As noted above, the

Complaint arises under Regulation 732.17(b)(6), which requires DEP to notify OSM in the event of "significant changes in funding or budgeting relative to the approved program." Plaintiffs allege that a significant event occurred when ERP became insolvent because at that time, DEP was put on notice that ERP was not complying with the terms of its permits and bonds, and that the Special Reclamation Fund's liabilities increased significantly. As a matter of law, the Court finds that these allegations present a plausible claim because the alternative bonding system is an important source of funding for the state's SMCRA program and may be significantly impacted when a major permit holder becomes insolvent.

Defendant presents two arguments in support of dismissal under Rule 12(b)(6). First, Defendant argues that this is not a viable claim because "DEP did, in fact, send a notice to OSM." Def.'s Mot. 1 (emphasis in original). In support of this argument, Defendant points to paragraph 45 of the Complaint, which Defendant characterizes as an "admission that DEP provided notice to OSM. . . ." *Id*. at n.15. Defendant also proffers a letter[2] and claims that it is DEP's notice to OSM. *See* Ex. B to Def.'s Reply, ECF 11-3. This argument is unavailing because neither the Complaint nor the letter negate Plaintiffs' claims.

In paragraph 45 of the Complaint, Plaintiffs allege:

> On July 8, 2020, DEP sent a letter to OSM in which it cited Plaintiffs' notice letter and denied that any significant events had occurred which affect the implementation, administration or enforcement of the approved State program.

The Court cannot conclude that this is an "admission" that Defendant fulfilled his duty under Regulation 732.17(b). In fact, the letter confirms Plaintiffs' allegation that Defendant expressly denied the occurrence of a significant event. On page 3 of the letter, Defendant states "Notwithstanding the characterizations of the pleadings made in [Plaintiffs'] Notice of Intent to

---

[2]  As with the Ward Affidavit, the Court finds that the letter submitted as Exhibit B to the Reply is incorporated by the Complaint's reference in paragraph 45.

Sue dated May 8, 2020 [], the allegations and statements in pleadings are not findings by DEP that significant events occurred which affect the implementation, administration or enforcement of the approved State program." Ex. B to Def.'s Reply 3. As a matter of law, DEP cannot "promptly notify [OSM], in writing, of any significant events" by submitting a letter that expressly denies that a significant event has occurred.

Moreover, the letter does not disprove Plaintiffs' claim because it does not show that DEP notified OSM of a significant change in the program's funding. Although the letter notes that ERP has become insolvent, it does not explain the insolvency's impact on the alternative bonding system, the breadth of ERP's liabilities and permit violations, the amount and conditions of ERP's bonds, the ability of DEP to collect the full value of the bonds, the scope of the special receivership, or the ability—or lack thereof—of the Special Receiver and DEP to fund reclamation at all ERP sites. Ex. B to Def.'s Reply. Not only did DEP omit these facts, the letter attempted to disavow similar statements made in the Ward Affidavit, stating "[s]ome allegations in the pleadings were to inform the Court of the possibility of a worst-case scenario such as the instantaneous melt-down of ERP . . . ." Ward Aff. at ¶ 64; Ex. B to Def.'s Reply 3. It is unclear what DEP meant by "the instantaneous melt-down of ERP," given that ERP "is in material default of its obligations under its permits and its reclamation agreement," does not have any employees or assets, and has ceased all operations. Ward Aff. ¶¶ 9-10. To the extent that Defendant believes that the statements made in Plaintiffs' Complaint and the Ward Affidavit are outdated or incorrect, Defendant must assert those facts for assessment on the merits. For the purposes of this Motion to Dismiss, however, the letter does not render the Complaint implausible on its face.

Defendant's second argument is that Plaintiffs have not stated a plausible claim because Defendant's duty to notify OSM under Regulation 732.17(b) never arose. Defendant asserts that

its duty to notify OSM is only triggered when DEP exercises its discretion to determine that a significant event has occurred. Plaintiffs' response is two-fold. First, Plaintiffs assert that the state's declaration is not required because the duty is triggered by the event itself. And second, Plaintiffs argue that even if a determination by DEP is required, DEP's statements in the special receivership action indicate that it considered ERP's insolvency to be a significant event.

The Court is not aware of any precedent that directly addresses this issue. However, a few courts have applied Regulation 732.17(b) but found that there was no "significant event" to trigger the notification duty. In *Dakota Res. Council v. N. Dakota Pub. Serv. Comm'n*, the plaintiff alleged that the North Dakota state agency failed to notify OSM after it adopted a new policy manual. No. 1:12-CV-064, 2013 WL 12085480, at *8 (D.N.D. Sept. 3, 2013). The plaintiff argued that this manual amounted to "changes in the provisions, scope or objectives of the state program" under Regulation 732.17(b)(1). *Id*. Exercising its own judgment, the court held that the policy manual was not a "substantive[] change" and did not "necessarily require notification" under Regulation 732.17(b). *Id*. Similarly, in *Pennsylvania Fed'n of Sportsmen's Clubs v. Norton*, the plaintiffs challenged the OSM's approval of a state program enhancement document because the state did not go through the amendment process outlined in Regulation 732.17. 413 F. Supp. 2d 358, 366-67 (M.D. Pa. 2006), *rev'd in part sub nom*., 497 F.3d 337 (3d Cir. 2007). In analyzing the applicability of Regulation 732.17, the court used its own judgment to conclude that the program enhancement document did not constitute a "significant event." *Id*. Neither court considered whether the agency had formally determined that a significant event occurred under Regulation 732.17(b).

The purpose and plain language of Regulation 732.17(b) also suggest that an event triggers the duty to notify. The purpose of Regulation 732.17(b) is to initiate OSM's program amendment

oversight process. If the Court were to hold that only a state's determination may trigger the duty to notify OSM, states could evade federal oversight and remain noncompliant with the SMCRA by ignoring events that negatively impact the program. Moreover, unlike other statutes, the Regulation's text does not expressly require a formal finding by DEP. In *Council of Commuter Orgs. v. Metro. Transp. Auth.*, the Court of Appeals for the Second Circuit considered whether the agency had a duty to act under § 113(a)(5) of the Clean Air Act. 683 F.2d 663 (2d Cir. 1982). That section provides "*Whenever . . . the Administrator finds* that any person has violated or is in violation . . . the Administrator shall notify the person and the State in which the plan applies of such finding." 42 U.S.C. § 7413(a)(5) (emphasis added). The court dismissed the suit because although the "EPA has a non-discretionary duty to issue a notice of violation whenever it determines that a violation has occurred," the agency expressly stated that it was not aware of any violation. *Council of Commuter Orgs.*, 683 F.2d at 672. In contrast, Regulation 732.17(b) does not expressly condition the duty to notify upon a prior finding by DEP. It simply states: "The State regulatory authority shall promptly notify the Director, in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program." 30 C.F.R. § 732.17(b). Accordingly, the Court finds that DEP's duty to notify OSM arises when a significant event occurs. Plaintiffs have plausibly alleged that a significant event has occurred. Therefore, the Court concludes that Plaintiffs have alleged a plausible claim.

### D.  Res Judicata

West Virginia has faced a long history of legal challenges to its SMCRA program, and more specifically, its alternative bonding system. *See* 67 Fed Reg. 37610, 37623 (May 23, 2002) ("Background on West Virginia's ABS"). Defendant argues that one of these legal challenges, *W. Virginia Highlands Conservancy v. Norton*, 147 F. Supp. 2d 474 (S.D.W. Va. 2001), precludes the

present case. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The Court finds that *Norton* does not satisfy the elements of claim preclusion or issue preclusion.

A suit is barred under the doctrine of claim preclusion where a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *CentraArchy Rest. Mgmt. v. Angelo*, 806 F. App'x 176, 178 (4th Cir. 2020) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). A claim will be precluded only where the following elements are met:

> (1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties are identical, or in privity, in the two actions; and (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding—i.e., the claims arise out of the same transaction or series of transactions, or the same core of operative facts.

*Id*. (citing *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016)) (internal quotation marks omitted). When applying this standard, the Fourth Circuit has held that the doctrine "is ultimately governed by . . . whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017).

It seems plain to the Court that *Norton* does not preclude the present suit because it does not arise from the same core of operative facts. In *Norton*, West Virginia Highlands Conservancy alleged that West Virginia's alternative bonding system failed to meet SMCRA's minimum requirements and that DEP failed to submit a program amendment despite being directed to do so by OSM. *Id*. These claims arose from events that occurred between 1995 and 2000. *Norton*, 147 F. Supp. 2d at 475. Plaintiffs' Complaint neither rests on West Virginia's failure to bring its alternative bonding system into compliance in 2000 nor its refusal to submit a program

amendment. *Id.* at 479. Rather, the Complaint arises from events occurring approximately two decades later, including the ERP's insolvency, the ongoing bankruptcy actions of Murray Energy and Revelation Energy, DEP's statements in the March 2020 special receivership action, and DEP's subsequent refusal to notify OSM of these events and their impact. *See* Compl. ¶¶ 31, 41-42. Thus, *Norton* does not preclude the present claim.

In the Reply, Defendant contends the "transaction" at issue here is West Virginia's failure to maintain a compliant alternative bonding system and that this transaction is identical to the one alleged in *Norton*. Def.'s Reply 10-12, ECF No. 11. Defendant further contends that "Plaintiffs have not alleged a single new or different 'transaction' involving DEP out of which their new cause of action allegedly arises." *Id*. This argument misunderstands, or worse yet misconstrues, the Complaint and the law. Although both cases allege that West Virginia's alternative bonding system is noncompliant, that allegation is not the only "transaction" the Complaint relies upon. As noted above, Plaintiffs allege that the Secretary's duty under Regulation 732.17(b) was triggered by the insolvencies and their inevitable effect on the alternative bonding system. Plaintiffs do not allege that the noncompliant bonding system alone triggered that duty.

Furthermore, Defendant's reliance on the Fourth Circuit's "broad" definition of "cause of action" in *Nash County Bd. Of Ed. V. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) is misplaced. In support of this argument, Defendant points to *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156 (4th Cir. 2008), which indicates that a case may be precluded even if the plaintiff alleges new facts that occurred after the resolution of a previous case. *See id.* at 163. However, the court's holding rested on its determination that the plaintiff's as-applied substantive due process claim was sufficiently similar to its previously rejected procedural due process claim. The court held that they were sufficiently similar because both were predicated on the plaintiff's argument that the

Constitution required a pre-deprivation hearing. *Id*. Given this similarity, the court concluded that

the substantive due process challenge could have been raised as a facial claim in the prior suit. *Id*.

The claims here could not have been raised in *Norton*. Plaintiffs could not have brought the present

claim in *Norton* because OSM had already exercised its oversight authority over DEP by directing

the state to file a program amendment. *Norton*, 147 F. Supp. 2d at 479 ("OSM reported, however,

that '[o]n October 1, 1991 . . . OSM notified West Virginia in accordance with 30 C.F.R. 732.17

that its regulatory program no longer met all Federal requirements.'"). Consequently, even if the

Court applies a broad definition of "cause of action," that definition could not be so broad as to

construe the claims in *Norton* to be identical to the claims here.

   Defendant's argument fails under the issue preclusion doctrine as well. To establish issue

preclusion, a party must demonstrate:

> (1) that the issue sought to be precluded is identical to one previously litigated;
> (2) that the issue was actually determined in the prior proceeding; (3) that the
> issue's determination was a critical and necessary part of the decision in the
> prior proceeding; (4) that the prior judgment is final and valid; and (5) that the
> party against whom collateral estoppel is asserted had a full and fair opportunity
> to litigate the issue in the previous forum.

*CentraArchy Rest. Mgmt.*, 806 F. App'x at 177 (citing *Collins v. Pond Creek Mining Co.*, 468 F.3d

213, 217 (4th Cir. 2006)) (internal quotation marks omitted). The central legal issue resolved in

*Norton* was whether the state violated 30 U.S.C. § 1259(c), a statute that requires the state to

operate an alternative bonding system "that will achieve the objectives and purposes of the

bonding program pursuant to this section." *Norton*, 147 F. Supp. 2d at 481. The *Norton* plaintiff

also filed a claim under Regulation 732.17(f), claiming that DEP failed to perform a mandatory

duty to submit a program amendment to OSM despite being directed to do so by the federal

agency. In the decision Defendant relies upon, Judge Haden determined that the court lacked

jurisdiction and dismissed the suit under *Bragg*, 248 F.3d 275. *Norton*, 147 F. Supp. 2d at 475.

However, the court did not mention the 732.17(f) claim in its decision, nor did it directly apply the *Bragg* holding to the regulation. *See id*. Accordingly, the Court finds that the issue here is not precluded by *Norton* because it was not "actually determined."

### E. Eleventh Amendment

Finally, the Court turns to Defendant's Eleventh Amendment argument. Defendant argues that this case should be dismissed because, as a state officer, Defendant is immune under the Eleventh Amendment. The Eleventh Amendment precludes citizens suits against states to be filed in federal court. *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999). And when, as in this case, a suit is brought only against state officials, the suit is barred "when 'the State is the real, substantial party in interest.'" *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 (1984). However, the Eleventh Amendment is subject to the *Ex parte Young* exception, which allows private individuals to sue state officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123 (1908).

The Fourth Circuit Court of Appeals applied the above rule to the SMCRA in *Bragg*, 248 F.3d 275. In that case, the plaintiffs alleged that state officials violated the SMCRA and corresponding state laws by issuing permits without making the requisite findings. *Id*. at 286. The court held that because the SMCRA grants states "exclusive jurisdiction" over the regulation and enforcement of minimum permitting standards, the federal requirements "drop out" once a state's program is approved. *Id.* at 289. However, the Court limited this holding to laws "involving the enforcement of the minimum national standard," and held that the SMCRA remains directly applicable in "matters relating to the good standing of a State program." *Id*. at 295. After applying this rule, the court recognized that only state claims remained and concluded that the Eleventh Amendment barred the district court from issuing the requested injunction because it improperly

directed a state official to act under state law. *Id*. at 295-96. Under this analytical framework, the Court must consider (1) whether the regulation Plaintiffs seek to enforce remains operative under the SMCRA's construction, and (2) if so, whether the regulation may be enforced under the *Ex parte Young* exception to the Eleventh Amendment.

*1.  Whether Regulation 732.17 remains operative.*

Plaintiffs' brief in opposition to the Motion characterizes the Complaint as presenting only one claim: "Plaintiffs' claim in this case [is] that Defendant has failed to provide notification to OSM of a change in program status [as required by 30 C.F.R. § 732.1]." Pltfs.' Resp. to Def.'s Mot. 12. On the other hand, the Complaint itself seeks enforcement of the SMCRA more broadly. Plaintiffs request (1) a declaration that the Defendant has failed to maintain its state program in accordance with the SMCRA and Regulation 732.17; (2) a declaration that the Defendant failed to perform the nondiscretionary duty under Regulation 732.17; and (3) an order directing DEP to comply with "every provision of SMCRA and the approved state program concerning bonding of coal mines." Compl 12.

Plaintiffs' narrowly construed claim is not precluded by *Bragg*. Regulation 732.17 requires state programs to notify OSM when there is a "significant event" affecting the program. The notification requirement triggers OSM review, making it a key feature of the federal oversight scheme. Accordingly, Regulation 732.17 does not "drop out" under *Bragg* because it is a "matter[] relating to the good standing" of West Virginia's program. *See Bragg*, 248 F.3d at 295. This conclusion is consistent with *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, a case in which the Third Circuit Court of Appeals denied the defendant's motion to dismiss and allowed the plaintiff's Regulation 732.17(f) claim to proceed against the state. 297 F.3d 310, 332 (3d Cir. 2002). On the other hand, to the extent that Plaintiffs seek enforcement of other sections of the

SMCRA, those laws have not been identified or briefed. Accordingly, the Court declines to rule on those claims at this time.

2.  *Whether Plaintiffs' Regulation 732.17 claim is exempt from the Eleventh Amendment under Ex parte Young.*

Having established that Plaintiffs' Regulation 732.17 claim remains operative under the SMCRA, the next question is whether the Plaintiffs' claim is barred by the Eleventh Amendment. Under *Ex parte Young*, a citizen may file a suit against a state official in federal court to enforce a federal law that imposes a nondiscretionary duty. *Ex parte Young*, 209 U.S. at 158. As stated above, Plaintiffs' claim is against a state official and arises under federal law. Therefore, the only remaining issue is whether Regulation 732.17(b) imposes a nondiscretionary duty.

Under Regulation 732.17(b), a state "shall promptly notify the Director, in writing, of any significant events . . . ." Defendant argues that this does not impose a nondiscretionary duty because states have the discretion to determine whether a significant event has occurred. As explained above, this argument fails because the duty to notify does not depend on a state agency's discretion. More to the point, however, whether a duty has been triggered is a factual question that is distinct from the issue of whether a duty is discretionary once it is triggered. Here, the Regulation provides that once a significant event has occurred, DEP "shall" notify OSM. 30 C.F.R. § 732.17(b). The use of the word "shall" indicates that it is a nondiscretionary duty. *Sierra Club v. U.S. Army Corps of Eng'rs*, 909 F.3d 635, 645 (4th Cir. 2018) ("'Shall' is an unambiguously mandatory term[.]"). Consequently, the Court finds that Plaintiffs' Regulation 732.17(b) claim falls under the *Ex parte Young* exception and is not barred by the Eleventh Amendment.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion.

The Court **DIRECTS** the Clerk to send a copy to all counsel of record and any unrepresented parties.

ENTER:          November 13, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE